IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALONZO HODGES, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 13-1600 |
| | ) Chief Magistrate Judge Maureen P. Kelly |
| SHELLY MANKEY, *Unit Manager*; | ) |
| BRIAN COLEMAN, *Superintendent*; | ) |
| JOSEPH TREMPUS, *Intelligence Captain*; | ) Re: ECF No. 19 |
| DORINA VARNER, *Chief Secretary's Office of Inmate Grievances & Appeals*, | ) |
| Defendants. | ) |

## OPINION

**KELLY, Chief Magistrate Judge**

Plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging the violation of his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution, arising out of his transfer from the Pennsylvania State Correctional Institution at Fayette ("SCI – Fayette") to the State Correctional Institution at Albion ("SCI – Albion"). Defendants have filed a Motion to Dismiss, alleging that Plaintiff's claims are barred by the applicable statute of limitations and otherwise fail to state a claim upon which relief may be granted. For the following reasons, Defendants' Motion to Dismiss (ECF No. 19) is granted as to the claims asserted against Donna Varner and Joseph Trempus but is denied in all other respects.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that on August 4, 2011, the Defendants retaliated against him in connection with filing grievances on both his behalf and on behalf of other inmates, and for

1

obtaining and distributing personal information regarding Defendant Shelly Mankey, a Unit Manager at SCI – Fayette. Plaintiff alleges that starting in 2006, after his single cell Z – Code status was revoked by Mankey, he resorted to the DOC administrative grievance process and sought to file criminal and civil actions in state court regarding the qualifications of various DOC mental health staff and employees, including Mankey. In conjunction with these actions, in 2008, Plaintiff obtained Mankey's college transcript. Plaintiff then filed grievances, attaching Mankey's transcript, and challenged her qualifications to serve on the staff of the mental health unit and to make decisions regarding cell status. These grievances were all summarily denied. In 2009, Plaintiff pursued litigation against other medical staff, challenging their licensing and qualifications. From 2009 through June 2011, Plaintiff also served "Right to Know Law" requests on various state agencies seeking information regarding licensing of staff members, the existence of any requirements governing the operation of a health unit in the prison, contracts between the DOC, Prison Health Services, Inc., and medical service personnel.

Plaintiff further alleges that he provided Mankey's college transcript to two inmates to assist them in filing grievances regarding Mankey's participation in their removal from SCI – Fayette's Special Needs Unit. Plaintiff alleges that on August 4, 2011, shortly after disclosing Mankey's information to other inmates, he was told to pack his belongings for transfer.

As indicated in the exhibits attached to Plaintiff's Complaint, on August 8, 2011, Plaintiff filed a timely grievance, No. 376506, alleging that Defendant Coleman violated his First Amendment rights when he transferred Plaintiff from SCI – Fayette because of a "problem" with Mankey, deemed to require a facility separation. (ECF No. 7-18). Plaintiff alleges that the "problem" arose out his constitutionally protected legal work related to the removal of his Z Code, rendering the transfer retaliatory. Defendant Trempus reviewed the grievance and denied

it as frivolous. (ECF No. 7-19). Trempus stated that while Plaintiff "may have acquired information on a staff member through the freedom of information act as well as additional information that is deem (sic) public record, … you also were able to obtain specific information that is not public record. You were also providing other inmates at SCI Fayette documentation to file frivolous grievances on this staff member. You were recommended for a separation transfer because of you (sic) actions and for no other reason. Your requested relief is denied and the separation remains active." Id.

Plaintiff appealed the initial disposition of his grievance to Defendant Coleman. In his appeal, Plaintiff conceded that he provided Mankey's private information in connection with grievances he helped to file on their behalf. However, Plaintiff argued that the information demonstrates that Mankey is not qualified for her position as a mental health care administrator. Accordingly, Plaintiff contended he did nothing wrongful to justify his transfer. (ECF No. 7-20). Defendant Coleman denied the appeal, noting that his transfer was "based on your own inappropriate actions, not for retaliatory reasons as you claim. You obtained paperwork with sensitive information on it and provided it to other inmates. These actions placed an SCI Fayette staff member in possible jeopardy." (ECF No. 7-21). Plaintiff filed a Final Appeal to the DOC Secretary's Office of Inmate Grievances and Appeals. Defendant Donna Varner, DOC Chief Grievance Officer, denied Plaintiff's Appeal on November 9, 2011.

In this action, Plaintiff alleges that as a result of his transfer from SCI - Fayette, he has suffered a loss of 23 cents per hour earned through prison employment, and has also suffered a reduction in the number of hours he is eligible to work. Plaintiff seeks back pay from the date of his allegedly wrongful transfer, as well as $500 in attorneys' fees, $88.49 for postage incurred in

shipping his property from SCI – Fayette to SCI – Albion, and punitive damages in the amount of $200,000.

## II. STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5C Wright & Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Phillips v. County of Allegheny, 515

4

F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id., at 234, quoting Twombly, 550 U.S. at 556 n. 3.

The United States Court of Appeals for the Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

## III. DISCUSSION

### A. Statute of Limitations

Defendants seek dismissal of this action as untimely filed. Defendants assert that because this action was filed on November 6, 2013, Plaintiff's claims relating to his August 4, 2011, transfer are barred by Pennsylvania's controlling two year statute of limitations. Plaintiff responds that the statute of limitation is tolled during the period he actively exhausted his available administrative remedies and, therefore, the applicable statute of limitations does not bar his claim.

The statute of limitations for Plaintiff's Section 1983 claims is two years. See Kach v. Hose, 589 F.3d 626, 634 (3d Cir.2009) ("The length of the statute of limitations for a § 1983 claim arising in Pennsylvania is two years."). The general rule in Pennsylvania is that "[t]he statute begins to run 'as soon as the right to institute and maintain a suit arises; lack of

5

knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." Baselice v. Franciscan Friars Assumption BVM Province, Inc., 879 A.2d 270, 275 (Pa. Super. 2005) (quoting Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468, 471 (Pa. 1983)). A Section 1983 cause of action is governed by federal law. See Wallace v. Kato, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law.") (emphasis in original). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which the action is based.'" Kach, 589 F.3d at 634 (quoting Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also Wallace, 549 U.S. at 384 ("[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete cause of action, that is, when the plaintiff can file suit and obtain relief.") (internal quotations and citations omitted).

The United States Court of Appeals for the Third Circuit has held that "[t]hough this Court has not spoken on the issue, several courts of appeals have held that, because exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act ('PLRA'), the statute of limitations applicable to § 1983 actions should be tolled while the prisoner exhausts." Pressley v. Huber, 562 F. App'x. 67, 70 (3d Cir. 2014) (citing Gonzalez v. Hasty, 651 F.3d 318, 323–24 (2d Cir. 2011); Brown v. Valoff, 422 F.3d 926, 942–43 (9th Cir. 2005); Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000)). The Court in Pressley went on to apply equitable tolling to the facts of the case, but concluded that the Complaint was untimely regardless of tolling. Id.

The Court of Appeals subsequently issued a precedential decision in <u>Montanez v. Sec'y Pennsylvania Dep't of Corr.</u>, No. 13-1380, ___ F.3d. ___, 2014 WL 5155040, at *5 n.5 (3d Cir. Aug. 15, 2014), holding that an inmate was not entitled to equitable tolling, because the inmate waited more than two years before he filed any grievances on his claim. <u>Id.</u> The Court found that because the inmate waited more than two years before "tak[ing] any action to protect his rights," he "simply delayed too long to take advantage of equitable tolling doctrines." <u>Id.</u> Notably, the Court in <u>Montanez</u> did not reject the notion that tolling should not apply when an inmate is vigilantly and actively exhausting his administrative remedies; rather, it held that the plaintiff's actions under the circumstances did not warrant equitable tolling.

In this case, unless tolling is employed, this claim is barred by the statute of limitations because Plaintiff's transfer occurred on August 4, 2011, but he did not initiate this action until November 3, 2013, more than two years later. However, if the statute of limitations was tolled while he exhausted his administrative remedies, the claim is not barred by the statute of limitations.

Assuming that tolling is applicable, the accrual date is August 4, 2011, the date Plaintiff was transferred, and the claim continued to accrue until August 8, 2011, the date he submitted Grievance No. 376506, at which time the statute of limitations would be tolled. <u>See</u> <u>Gonzalez</u>, 651 F.3d at 324 ("[U]nder the rule we articulate today, the applicable ... statute of limitations is tolled only during that exhaustion period and not during the period in between the accrual of those claims and when [the plaintiff] began the administrative remedy process."). Thus, the statute of limitations would be tolled for a total of 93 days from August 8, 2011, to November 9, 2011, the date the Final Appeal Decision regarding Grievance No. 376506 was rendered. Therefore, based upon the allegations in the Complaint, if tolling principles apply to this claim,

the last possible filing date would be November 5, 2013. Because the Complaint was apparently signed by Plaintiff on November 3, 2013, but was received by the Court on November 6, 2013, and given that this matter is governed by the prisoner mailbox rule,[1] the Court finds that it would be premature to dismiss this claim at this early stage of the litigation. The parties should be given the opportunity to examine this issue further in discovery and reargue their respective positions in a motion for summary judgment.

**B. Personal Involvement**

Defendants seek dismissal of Plaintiff's Complaint as to Defendants Varner, Coleman and Trempus, contending that the allegations against them are insufficient to sustain a Section 1983 claim as a matter of law. In order to state an actionable civil rights claim under Section 1983, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141–42 (3d Cir. 1990). Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally

---

[1] Pennsylvania and federal courts employ the "prisoner mailbox rule." See Perry v. Diguglielmo, 169 F. App'x. 134, 136 n. 3 (3d Cir. 2006). In Houston v. Lack, 487 U.S. 266 (1988), the United States Supreme Court crafted the prisoner mailbox rule, providing that the date on which a pro se prisoner transmits documents to prison authorities for mailing is considered the actual filing date. Id. at 275. Pennsylvania federal courts have applied this mailbox rule to cases where the pro se prisoner signed and/or dated a document within the proper time limit, but it was not docketed by the Court until after the deadline. See, e.g., Pendergrass v. Gray, No. 06-2247, 2006 WL 3165007, at *3 (E.D. Pa. Oct. 30, 2006) (citing Askew v. Jones, No. 04-3900, 160 F. App'x 140 (3d Cir. Dec.13, 2005)); Taylor v. Naylor, No. 04-1826, 2006 WL 1134940, at *3 (W.D. Pa. Apr. 6, 2006); Sabella v. Troutner, No. 05-0427, 2006 WL 229053, at *4 (M.D. Pa. Jan. 31, 2006)).

involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs ... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137–38, (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08–2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner .")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Therefore, any attempt by a plaintiff to establish liability against a defendant based upon the handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for Section 1983 liability).

9

Defendant Varner is employed in a supervisory capacity by the DOC as its Chief Grievance Officer. The only specific allegation against Defendant Varner stems from her reading and denying Plaintiff's grievance appeal. There are no allegations that Defendant Varner was involved in the day-to-day operations at SCI–Fayette, or, more importantly, in the alleged constitutional deprivations suffered by Plaintiff. Similarly, Plaintiff's allegations against Defendant Trempus arise solely out of his involvement in reviewing and denying Plaintiff's grievance at the first step in the grievance process. Accordingly, dismissal is appropriate as to both Defendants Varner and Trempus. Plaintiff will not be granted leave to amend his claim against either as doing so would be futile.

However, with respect to Defendant Coleman, the documents attached to Plaintiff's Complaint reveal that Plaintiff believes Defendant Coleman actively participated in the decision to transfer Plaintiff from SCI – Fayette based on a retaliatory separation of Plaintiff from Defendant Mankey. (ECF No. 7, ¶ V.B.2, 7-19). Discovery may reveal that the alleged conduct does not give rise to a cognizable Section 1983 claim. However, at this early stage of the litigation, the allegations of the Complaint with regard to Defendant Coleman are sufficient to state a claim upon which relief may be granted. Defendants' Motion to Dismiss Defendant Coleman is therefore denied.

### C. First Amendment Retaliation Claim

Plaintiff's Complaint alleges that his transfer from SCI – Fayette was retaliatory and in violation of his protected First Amendment rights. Plaintiff contends that his transfer was the result of filing lawsuits and grievances on his own behalf, seeking public and private documents through the legal process, and sharing Mankey's private information with other inmates in conjunction with assisting them in filing their own grievances.

A plaintiff in a retaliation case must prove that: (1) he engaged in constitutionally protected conduct, (2) "he suffered some adverse action at the hands of the prison officials," and (3) "his constitutionally protected conduct was a substantial or motivating factor in the decision to [take that action]." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (internal quotation marks omitted). The requisite causal connection can be demonstrated by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities. Rauser, 241 F.3d at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.").

A prisoner's ability to file grievances and lawsuits against prison officials on his own behalf is a protected activity for purposes of a retaliation claim. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Allah, 229 F.3d at 224; Milhouse v. Carlson, 652 F.2d 371, 373–74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). Plaintiff claims that the retaliation was the result of his filing grievances and using legal process to challenge the propriety of the operation of SCI – Fayette's medical and mental health units. Thus, at this early stage of the litigation, and

given the deference afforded pro se pleadings, Plaintiff has alleged the first element of a retaliation claim.

With respect to the second element, the Plaintiff alleges that he was transferred to a different DOC facility. The United States Court of Appeals for the Third Circuit has concluded that transfer to another facility is sufficiently adverse to support a retaliation claim. <u>DeFranco v. Wolfe</u>, 387 F. App'x 147, 157 (3d Cir. 2010). Thus, Plaintiff has alleged the second element of a retaliation claim.

With respect to the third factor, whether his protected conduct was the motivation for his transfer, Plaintiff alleges that he has a long history of resorting to legal process to obtain licensing information and challenge the qualifications of nearly all staff members connected with SCI – Fayette's medical and mental health units. Plaintiff's Complaint further establishes that, over the course of five years, his conduct did not result in any retaliation – until, as alleged, he provided Mankey's personal information to other inmates in connection with assisting them in filing grievances deemed frivolous. This conduct, if it is the basis of his transfer, is not protected activity giving rise to a First Amendment claim, and therefore could not form the basis of a Section 1983 claim. <u>See</u>, <u>e.g</u>, <u>Shaw v. Murphy</u>, 532 U.S. 223 (2001)(United States Supreme Court has held that inmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates).

Moreover, it appears Plaintiff will not be able to establish a causal connection through reliance upon an unusually suggestive temporal proximity between protected activity on his own behalf and his transfer. Plaintiff alleges over five years of legal proceedings and grievances in his own name, with his last transactions in May 2011 and June 2011 seeking information related to individuals and corporations who are not parties to this litigation and who do not appear to

12

have played any role in his transfer. (ECF No. 7, p. 10). Thus, it is apparent that Plaintiff faces a substantial burden in proving his claim. At this early stage, however, given the deferential standard applied to Motions to Dismiss, Plaintiff's Complaint does allege sufficient facts to support a cause of action based on his transfer. As such, the Motion to Dismiss should be denied in this regard.[2]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No.19) is denied in part and granted in part. An appropriate Order follows.

## **ORDER**

AND NOW, this 22nd day of December 2014, upon consideration of Defendants' Motion to Dismiss (ECF No. 19), and the briefs filed in support and opposition thereto, as well as the Plaintiff's Complaint and extensive exhibits attached thereto, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that the Motion to Dismiss is granted with prejudice as to Defendants Donna Varner and Joseph Trempus, and the Clerk is directed to terminate them from the docket of this action.

IT IS FURTHER ORDERED that the Motion to Dismiss is denied in all other respects.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within

---

[2] Defendants contend that Plaintiff is unable to sustain a cause of action for retaliation in violation of his First Amendment rights because his transfer was predicated upon a legitimate penological interest, *i.e.*, a justifiable separation between Plaintiff and Mankey resulting from Plaintiff's release and sharing of information deemed to create a threat to Mankey's safety. (ECF No. 20, pp. 6-7). This contention, however, cannot be resolved as a matter of law at this early stage of the litigation, given the allegations contained in Plaintiff's Complaint and the exhibits attached thereto.

thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: December 22, 2014

cc: All counsel of record by Notice of Electronic Filing

Alonzo Hodges
DA-2951
SCI Albion
10745 Route 18
Albion, PA 16475-0001